for the appellant, Mr. Ryan, and for the athlete, Mr. Manchin, you may proceed. Please the court, counsel, and Martin Ryan from OSAD for Robert Jones, as this court said in that Stanbridge case I cited in the brief, where a determination of a defendant's guilt or innocence turns on the credibility of the defendant and the accuser, error is particularly likely to be prejudicial. This is a close case. That was not disputed, in fact. Prosecutors stated during closing argument that the case turned entirely on credibility, namely Hannah's credibility. She was the entire basis for the state's case here. Her testimony was not independently corroborated by other evidence, or as Detective Huckstep put it, it was all he said, she said. In a nutshell, what Hannah said at trial was that from around the ages of four to eight, Robert, who was probably at that point a live-in boyfriend, was his job to put her to bed every night, and every night, either every night or almost every night, he committed one of three forms of sexual assault, either putting his fingers in her vagina, his mouth on her vagina, and even his penis on her vagina. She also testified about one occasion where he told her or tried to get her to put her mouth on his penis, and she evaded doing that by just sort of touching it with her tongue, which is count four. When she was eight, she lost her own bedroom, and there was a shuffling of sleeping arrangements, and she was no longer sleeping in a room by herself from around the ages of nine to eleven. She said then a form of abuse occurred on the couch. She said that despite the fact that he had bought his own house, and it was also, I would note, that it was undisputed that he sold that house when he moved out to Christine, Hannah's mother. Hannah's testimony was contradicted by her own mother. She says that she put her own child to bed, as you would expect, and it was not Robert. But she said the child would wake up, or she didn't like to go to sleep, and the mother would go to sleep, and then Robert would put her to bed. She said that sometimes, if the kid got up, and if she weren't asleep, Robert probably put her to bed. Not, it was his job, as Christine said. Not, I don't ever remember my mom putting me to bed. Even given for the fact that Robert may have from time to time occasionally put her back to bed, the child's testimony was not that mom would put me to bed every night. Christine and Robert both said that they slept in an adjacent bedroom at that time, during the span of when she's about four to eight. She says it's across the house, which doesn't happen until later. By that time, there's a new configuration, and Robert's moved out, at least according to Robert and Christine. He's bought a different house. He's sold that house to Christine. No one ever notices any form of the abuse, which occurs in her bedroom, supposedly, with the door open, and a hallway light on, and a room that's right across from a bathroom. And there's not only her mom next there, there's also her older sister. How many cases do you see where there's a witness to criminal sexual abuse? I don't know. Well, you handle a lot of appeals. I'm saying, actually, you know what? I don't get a ton of cases. Most of my cases are drug cases. But to be honest, lack of corroboration is lack of corroboration. I'm talking about the closeness of the case. Right, but I'm talking about the nature of the case. When you say that something happens every night, every night, in a room with an open door across from a bathroom, and again, this is not just that he's putting his fingers on her vagina. This is that he's putting his mouth on her vagina, or that he's putting his penis, his bare penis on her vagina. So either way, whether he's under the covers or on top of her, there's this large, or at least full-grown man on top of a four-year-old. And if anybody's walking by to go to the bathroom in any time, one of these four years where it's happening almost every night, it would seem that somebody would have seen something, or that it at least makes it kind of more improbable. Well, all we know from the record is that there's no one who saw anything who came forward, right? That's the situation at best. Certainly no one called anybody. Fair enough. Neither side called Lauren, who I believe is the older sister. Christine didn't see anything, and she testified. As for count four, the single episode, the state's proof was even weaker, given that what she said at trial was completely inconsistent with what she had told Detective Huckstead after she had already essentially complained about Robert Jones, in that she said, he wouldn't have me give him oral sex at all, and he did it to me, but he wouldn't have me give it to him at all. I'm sorry, never had me do it to him. Mr. Ryan, but you act like this is so amazing. Her testimony actually was, she explained that at the trial. She said, I licked his penis on one occasion, one time, and I jumped back into bed. And she said, when I think of oral sex, I'm thinking about putting my lips in my mouth entirely around his penis, and that never happened. The explanation is not responsive to the inconsistency. She didn't say, you know, I thought when he asked me for oral sex, all it was was a tongue or his whole mouth, so I said it wasn't oral sex, because all I used was my tongue. She said, he wouldn't have me give him oral sex at all. Her testimony at trial was, he wanted me to put my mouth on his penis, not my tongue. He asked for the mouth. No, I don't think that was her testimony. It was. No, no. Her testimony was not that he asked her to put his mouth on his penis. Her testimony was that her, in her mind, what she considered to be oral sex was putting her lips and mouth around the whole, her entire mouth around the penis. To her, that's what oral sex was. I don't think the testimony ever was that he asked her to do that. It was. Okay. Earlier, I'm sorry, she testified to both. Earlier, in her first run through, she said he wanted me, he said it would be a good idea for him, for me to put my mouth on his penis. Then, when she was confronted with her inconsistent statement and trying to come up with an explanation for it, after she initially denied making that statement at all to Detective Huckstepp, she said, well, I thought oral sex meant her whole mouth. She denied saying to Huckstepp that she ever performed oral sex on him. She said she denied it. At trial? At trial. She said, I never told Huckstepp I performed oral sex. I think, actually, at one point, counsel read quotes from her transcript that she denied. Right. She didn't recall saying to Huckstepp that she performed oral sex. She did say she licked his penis once with her tongue.  She basically said she didn't remember saying it. But, anyway, go ahead. Okay. Well, this is one of the problems with delaying this. Okay. At any rate, I believe it's further impeachment. And, again, the explanation of what I think of as oral sex doesn't go to the prior statement, which was, he wouldn't have me do it. Whereas in her trial testimony was, her first run through was, in fact, he said I should put my mouth on his penis. That's different. Okay. I don't want to argue with you. She's saying she didn't do it. She didn't perform oral sex on him. He didn't have her do it. It's different than saying he asked me to do it. My point is, her explanation for the confusion of oral sex doesn't explain the inconsistency. Okay. All right. Well, at any rate, it seems that it's not disputed in this case that the case was closely balanced. And here I think that it's important because there were two problems with this case at trial where the state effectively had two thumbs on the credibility scale when this is a case that's all about credibility. The first was the propensity evidence from the subsequent acts in Arizona. The three factors listed in the statute, 7.3 for when propensity evidence is to be admitted. I should back up. The statute lists three. And our Supreme Court in Donahoe has also said that you still have to do a probity versus prejudice. So, effectively, I would say there are four factors. The first statutory factor is temporal proximity. Here we have about an eight-year span of the charged offenses that are somewhere between 1998 and 2005. Then we've got a roughly one to two-year period in Arizona. Well, I suppose given that it is an eight-year span of offenses, it's arguably proximate, but there's no evidence between the time of the last incident in Illinois and when they moved to Arizona. Also, and I will get to this point, it's after the fact, so of course the offenses in Illinois, whether they happened or not, are already done. The second prong is similarity. Here there's no similarity in the conduct itself to the charged offenses because the charged offenses are all assaults. They all involve genital contact and several of them involve oral contact, whereas in the evidence of the conduct in Arizona involved eventually putting his hand under her bra. The third factor is other relevant circumstances. And I would say the Arizona evidence is basically more allegations from the same person whose credibility is the entire issue in this case, and there's no corroboration to add anything to them. And when you get to the probity versus prejudice analysis, when you look at the record, what the state advances as probity is, we need this to explain the delay in her reporting. Why she doesn't say anything to anybody while she's in Illinois. Why she waits to speak up in some form or other, such as in Arizona. And of course that's like saying, so basically her delay in reporting somehow makes him have a greater propensity to sexually assault children. It doesn't really flow. It's also not true in that it's contrary to what she said about how she reported. When she was asked at trial what led to her decision to finally say something or at some point to her mother, she said, I pieced it together over time. I got older, and I realized that what had been happening was wrong. She didn't pinpoint it to a specific event. In fact, there's no timetable at all for whenever the last alleged incident occurred in Arizona was. And the time she breaks down is crying to her friend, and her mother gets out of her that she's uncomfortable with Robert. But according to Christine, she won't say what it is. Hannah, on the other hand, says that she told her mom about the abuse at that time. At any rate, the family moves to Florida. So there's no probity. It doesn't prove anything. It doesn't help the state explain the delay because she's already explained the delay. And I don't see how the delay makes him have a greater propensity, which is the issue, is to his propensity to commit sex offenses. At the post-trial motion hearing, the judge admitted that the Arizona evidence was prejudicial. Essentially, at trial, he just said, well, he's already charged with these sexual assaults, so this is nothing. I think... Mr. Ryan, isn't all propensity evidence prejudicial? Yes. Oh, yes. Okay. Isn't that what the trial judge is saying? It's prejudicial. No, he was saying, yes. Oh, yes. You mean the other post-trial comments? Yes. The evidence, the only more specific incidence of the conduct in Arizona was that he used the absence of Hannah's mother when they were in some temporary hotel room before he could start his job to put his hand around her abroad after giving her a massage, even though she had the flu or because she had the flu. Maybe he was trying to make her feel better, whatever. You know, it's just non-provative evidence that he's a bad person. It doesn't add anything. And again, all we're told is this is a delayed reporting explanation, which I don't know how it establishes retroactive propensity. The second thumb on the scale is, I think, the prosecutor's comments in opening and closing. Basically, positively building up Hannah's credibility and image at Robert's expense. I think it's inflammatory to say that he stole her innocence. I don't think that's a fact in evidence. I don't think it has anything to do with the case. Saying that she's bright, funny, smart, outgoing also has nothing to do with the case. Injecting that she's been hospitalized three times for cutting herself when you didn't have any evidence to connect that to the case meant that the jury heard it, even though that evidence was not brought in. And then four times during closing argument, the prosecutor said basically that Hannah has to be telling the truth or should be believed because she's only 17 and she's talking about sexual matters in front of strangers and that she went through cross-examination. I think that Hannah's likable qualities are just an attempt to gain sympathy. They have nothing to do with the case. The hospitalization facts are not evidence about her suffering are just, I think, calculated to arouse sympathy in the jury. I don't think there's anything inherently true. Yes? The jury was instructed to disregard any arguments that weren't based on the evidence. Is that correct? That is correct. This court addressed that in People v. Bunning, which recognized that the instructions do not always cure the problem. And in here, the instructions, while they would say disregard something the lawyer says that you can disregard something the lawyer says that's not the evidence, the instructions don't tell the jury that being 17 and sitting through cross-examination is not a reason for considering a witness credible. The only objection defense counsel made was to the cutting statements, right? There was no objection made when the state described her as bright, outgoing, sociable. Yes, that's correct. No, trial counsel preserved none of this with the exception that he got a sidebar on the He didn't object during the closing arguments either? No. No, he chose to respond to them in his closing arguments. Personally, though, I don't see how being 17 and sitting through cross-examination, which is effectively like saying the defendant's right of cross-examination gets used against him because if you cross-examine someone and they don't admit it, you're right, I've been lying and making this up the whole time, is now a reason for that person to be credible. Not only did he not object at the time except to the cutting, he didn't file a post-trial motion raising any of those issues either. It's actually a little cloudier than that. Trial counsel filed a post-trial motion and then was off the case. He was replaced by a different post-trial counsel who filed an amended motion and complained about one of the instances of the prosecutor saying that you have to believe her because she's 17. But either way, there was no objection at trial. So there's no argument that it would not be forfeited. And again, so we have basically a concerted effort to use anything. That Hannah is funny and smart and that she suffered things and that Robert is an innocent stealer and that she's 17 and went through cross-examination so we have to consider her credible to make up for the fact that there was nothing else to corroborate their testimony. And I think between that and the improper other crimes or I should say propensity evidence, there wasn't a fair trial in this case. I would say at best, with the closeness of this case, the state had no margin for error. And yet those two errors, I think, weighed like thumbs on the scales of credibility. If there are any further questions? Mr. Jones, consistent with the brief, is asking for this court to reverse his convictions for lack of evidence or on the alternative grant him a new trial. Okay, thank you. You'll have additional time on the rebuttal. Thank you. Thank you, Your Honor. May it please the Court. Counsel, in this case, the reasonable doubt argument, if you read the defendant's closing argument and the defendant's argument on appeal, he could substitute one or the other. It's the exact same thing. The defendant's making the same challenges to the credibility of the victim that he made at trial and that the jury rejected those credibility determinations. He's asking this court to act as a new jury and substitute its judgment for that of the jury as to the credibility of his witnesses. And that is simply not the standard of review. The standard is taking all the evidence in the light most favorable to the state, put any reasonable trial fact upon the defendant guilty beyond reasonable doubt. And that standard was met here. The inconsistencies were minor at best and were explained by the witness. The defendant has tried to, again, you know, point to one word here or there and saying that's not the same thing. In addition, I think the victim's testimony that I told the officer I didn't engage in oral sex because I didn't consider that to be oral sex is responsive to the inconsistency and is a reasonable explanation the jury could accept to explain the differences between her trial testimony and the statements of the police officer. And in regards to the inconsistency as to the room arrangements, again, you're talking about a child at age four when this all begins, this coming to trial 13 years later, a child's ability, if the child was perfectly correct as far as everything, the defendant's argument would now be she can't believe because she's been so well coached as to what to say or has memorized what she's supposed to say. I think that the inconsistencies and the fact that the impeachment case law is clear that just because a witness is impeached does not mean that the jury has to disregard their testimony or cannot believe them anyway. And I think that in this particular case, the jury's determination was correct that there's simply no basis for this court to reweigh the evidence or to determine that the jury's finding that the defendant is guilty because of the credibility of the victim. There's just simply no reason to reverse on that basis. With regard to the continued sexual abuse in Arizona, I think that is clearly admissible. There is no error at all in the admission of the evidence. Defense continually complains about the prejudice of this evidence, but the standard is not just is there prejudice. The prejudice has to substantially outweigh the probative value. And in this case, the trial court said yes, in the post-trial motion, said yes, there is prejudice, but it was substantially outweighed by the value. I think that that determination is correct. The case law is clear that sexual abuse or continued sexual conduct between the defendant and even before the statute, the continued sexual conduct between the defendant and the same victim was admissible to show the course of conduct, to show the intense design, the intense relationship between the parties, and to corroborate the victim's testimony. So even without the statute, this continued sexual abuse would have been admissible. And when you get the statute saying that other sexual offenses come in for propensity, the fact that the defendant continues to sexually molest this girl after they move out of the course of conduct. So the trial court was correct in admitting this. In his brief, the fact that it's the same victim does not mean it gets excluded. It does not have to be other victims for other crimes evidence to come in. The case law is clear that the victim can testify to other sexual offenses with the same charge of offenses. And the fact that the continued sexual abuse in Arizona was somewhat different would only go to the weight of the evidence to be given by the jury, not its admissibility. The very fact that it's with the same victim, even if he's changing what he's doing to her, does show the propensity. The fact that he continues to molest this child does show propensity towards this offense. And the challenge of credibility, again, goes to weight, not admissibility. So I think that the trial judge's determination that the other crimes evidence in Arizona was admissible. And I think it was admissible because it does also indicate how this family came about. The child starts realizing as she gets older and knows what's happening in Arizona that this isn't right, that there's something wrong here. And then she finally starts to tell people about it. And I think that even on that basis, it was admissible. So that discontinued abuse and the case law is clear that the other sexual offenses can be before or after. It doesn't have to be before to be admissible, unlike what the defense seems to argue in his brief here on appeal. And with respect to the closing argument, everything except the reference to cutting was waived. That was the only objection during trial. And the only objection in either post-trial motion was to one of the references in the closing argument regarding the victim's credibility. But without the timely objection during trial, I think it was waived. With respect to the cutting argument and the case law, it's clear that it is error for this prosecutor to mention something, an oral argument, an open statement that he doesn't prove up. But the standard is reversible error occurs only in cases of deliberate misconduct by the state that causes substantial prejudice to the defendants. And it's improper with foreknowledge to include matters in opening statements that are not there to prove. That's people such as Jackson, King, and Garcia cited in my brief. In this case, the prosecutor made a good faith reference to the hospitalization and the trial court ruled against its admissibility. That does not make his opening argument or opening statement invalid. It does not require a new trial. Because there's simply, this is not a case where the prosecutor deliberately refers to evidence he knows is not going to be brought in. He refers to evidence he expected to be able to bring in but was precluded. And as far, and again, as Justice White noted, the jury was instructed to disregard any statements that was not based on the evidence. The case law is that the jury is presumed to have followed these instructions. The defendant wants to put that presumption on his head and say the jury is supposed to be presumed to ignore the instructions and to consider it anyway. I think that that instruction would cure any error in the reference to cutting in the opening statement. With regard to the closing argument, it is proper to comment on the victim's or the witness's demeanor on the stand, to how they act, how they testify, and that is a proper comment on the evidence and proper reference to the credibility of the witness. It does not amount to a vouching for the witness. It does not amount to a proper bolstering of the witness. There is clearly no error in the prosecutor's argument that should be viewed as despite the failure to object to trial. If there are no questions from the court. There don't appear to be any. Thank you. Thank you, Your Honor. I found some of the things that I had quoted in the brief about Hannah's testimony. I believe on direct, what she was talking about with oral sex. Quote, once he pulled me more on top of him and he told me it would be a good idea if I put my mouth on his penis. Unquote. Later, when the Hucksteps statement is brought to her attention on cross and she says, well, he wouldn't have me give him oral sex at all. She did say she didn't recall saying it. But anyway, she did say, he said, it's a good idea if you put your mouth on my penis. In response to the state's argument, as I said in my brief and possibly the reply brief, I realize that there's a lot of deference due to a jury's verdict, but our Supreme Court has made it clear that it's not absolute. For example, in the Smith case, where the evidence is so unreasonable, improbable, or unquote, a conviction has to be reversed. In Wheeler, which I cited for my standard review, our Supreme Court again talked about that while there is a presumption, it's not absolute. And again, I would characterize these inconsistencies as more than minor. Again, the basis of the offense, the main body of the offense is here, as the ages four to eight, were supposedly occurring nightly in her bedroom because he was the one putting her to bed and her mom was far away. When her mom says no, I was the one putting her to bed and I wasn't far away. I don't think that's a minor inconsistency when it goes to the entire basis for the conduct. Or at least counts one through three. And it sounded like the way she described it, count four also occurred in the bedroom because she said she touched her tongue to his penis and then went back to bed. As to another thing, I never actually said anything or implied that the prosecution had coached Hannah. I simply am asking this court to look at the inconsistencies that go to the basis for committing the offense, to consider them in the closeness of the case and in the reasonableness of whether the state has met its burden. As to the Arizona analysis, the state doesn't go through the propensity analysis. They don't go through the steps. They never explain how any alleged delay in reporting is relevant to retroactive sexual propensity. The state talks about this would have been admissible to show intent design. My reply brief explains that, of course, it could never have been admissible to show intent because Robert never put intent at issue. As the Lenly case points out, where it's not an issue, it doesn't come in. Robert didn't say, I touched her but accidentally. I had no intent. He says it didn't happen at all. Also, had the court chosen to admit this as another crime's evidence, the defendant would have been entitled to a limiting instruction, telling the jury that they could only consider this, not as substantive evidence of guilt, but only for a specific aspect of the case. The state would have to actually go through and prove what aspect of the case the Arizona conic was relevant to. The state doesn't respond to that. In any rate, if this goes back for a new trial and the state wants to pursue a new trial, then the defendant could get a limiting instruction if they can actually meet the tests. It's not enough just to say it's relevant and then list a bunch of different ways without actually explaining how it fits those tests. In my reply brief, I specifically conceded that the fact that the alleged abuse in Again, I don't see how, and the state has not explained, how it's probative of retroactive sexual propensity when the only reason the state says that they need it is because it explains the delay in reporting, which the victim explained otherwise. Also, the case cited by the state, failure, also dealt with prior sexual abuse. And again, I would also agree with the state that it's not fatal to the evidence in and of itself that it's the same victim. I think evidence after the fact with the same victim might have some probative value if there was a better piece of evidence in Arizona and it was the same kind of thing he was doing to her in Illinois, such that the Arizona evidence got made a lot more probable and therefore did tend to independently corroborate the Illinois actions. But here, it's the same person accusing the defendant, and again, with nothing else to bolster it. As for closing arguments, I don't agree with the state that the subjective legal knowledge of the prosecutor determines what the prosecutor is allowed to say in opening or closing and whether it's proper. I don't think prosecutors are allowed to essentially not pay attention to rules of evidence and say things. And if the defendant objects, okay, don't put them in if they get sustained. I don't think it should be a trial strategy to put your least experience or lower experience prosecutor on something because they can say things that are not intentional and therefore it will stick because they don't know any better. And again, the Stanbridge case. I haven't seen them any closer than this case. When you have an error, there's a high level of prejudice. Anyway, if there are no questions. Thank you. We'll take this matter under advisement and stand at recess until further discussion. Thank you.